UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ALBERT CHARLES, JR. | * | CIVIL ACTION |
| VERSUS | * | NO. 20-1424 |
| ANDREW SAUL,<br>ACTING COMMISSIONER OF | * | SECTION "J" (2) |
| SOCIAL SECURITY | * | |

## REPORT AND RECOMMENDATION

Plaintiff Albert Charles Jr. seeks judicial review pursuant to section 405(g) of the Social Security Act ("the Act") of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claims for disability insurance benefits ("DIB") under Title II and for supplemental security income benefits ("SSI") under Title XVI of the Act.[1] Pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2(B), this matter was referred to the undersigned United States Magistrate Judge for submission of Findings and Recommendations.

## I.    PROCEDURAL HISTORY

Plaintiff Albert Charles Jr.. is a fifty-four year old male with relevant work history as a pipefitter helper, painter/sandblaster, concrete work, light equipment operator, laborer, and truck driver. *See* Administrative Record, ECF No. 13 (hereinafter Transcript ("Tr.")), at 45-48; 56-57; *see also* Tr. 19-20.[2] On March 23 and March 28, 2017, he filed applications for DIB and SSI alleging disability commencing on March 10, 2017 (Tr. 159-65; 166-71), manifesting as stomach, back, and arm problems as well as depression. *See, e.g.,* Tr. 91, 95, 464; 467-70.

---

[1] 42 U.S.C. §§ 405(g), 423, 1381a, 1382c(a)(3)(A).
[2] Plaintiff also testified that he has a 12th grade education, with military service and no subsequent formal education. Tr. 42. He has a valid driver's license, but it has been blocked for non-payment of tickets. Tr. 42-45; 258.

The agency denied Plaintiff's SSI and DIB applications on July 28, 2017.  Tr. 91-94, 95-98.  He filed a written request for a hearing, and Administrative Law Judge ("ALJ") Jennie L. McLean held that hearing on February 12, 2019.  Tr. 36-64.  Plaintiff appeared and testified at the hearing and was represented by counsel, William Mustian.  *Id.* at 36.  Clifton King, an impartial vocational expert, also appeared and testified at the hearing.  *Id.*

On May 22, 2019, the ALJ issued a decision denying Plaintiff's applications for benefits.  Tr. 7-21.  On June 21, 2019, Plaintiff requested Appeals Council review.  Tr. 155-57.  The Appeals Council denied the request for review on April 16, 2020, rendering the ALJ's decision the final decision of the Commissioner for purposes of this Court's review.  Tr. 1-3.

Plaintiff filed this suit on May 13, 2020.  ECF No. 1.  In accordance with this Court's September 1, 2020 Order (ECF No. 14), Plaintiff filed his Memorandum of Facts and Law on October 12, 2020 (ECF No. 15), and the Commissioner filed his Memorandum of Facts and Law on November 23, 2020.  ECF No. 16.

## II.    STATEMENT OF ISSUES ON APPEAL

Plaintiff identifies three issues for appeal:

1.    There is a lack of substantial evidence to justify a finding of alternative work in significant numbers;

2.    There is a lack of substantial evidence for a finding that Plaintiff can perform less than a full range of light work.

3.    The ALJ erred in failing to provide a rationale for not awarding a closed period of disability and erred in not awarding a closed period of disability.[3]

## III.    ALJ'S FINDINGS

The ALJ made the following relevant findings in her ruling:

1.  Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2021.

---

[3] ECF No. 15, at 3.

2.  Plaintiff has not engaged in substantial gainful activity since March 10, 2017, the alleged onset date.

3.  Plaintiff has the following severe impairments: status post gunshot repair of left upper extremity and degenerative disc disease, which significantly limit his ability to perform basic work activities as required by SSR 85-28. Plaintiff's other medical problems (e.g., rib fractures, left thoracotomy, shortness of breath, headaches, bronchitis, sinusitis, gastroesophaeal reflux disease, repair of persistent perianal fistula and irrigation and debridement of cutaneous abscess) have entailed minimal follow-up treatment indicating these are temporary impairments imposing no or slight limitations. As such, these do not qualify as "severe" or impose additional limitations. Likewise, his depressive disorder does not cause more than minimal limitation in his ability to perform basic mental work activities considering the four broad areas of mental functioning know as the paragraph B criteria (20 CFR, part 404, Subpart P, Appx. 1). Therefore, the depressive disorder is likewise non-severe.

4.  Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  Plaintiff has the residual functional capacity to perform light work as defined in 20 CFR 404.1567 (b) and 416.967(b) in that he can lift, carry, push and/or pull twenty-five pounds occasionally and twenty pounds frequently; sit for a total of six hours in an eight-hour workday; can stand and/or walk for a total of six hours in an eight-hour workday; has unlimited balancing; can frequently kneel, crouch, stoop and climb ramps and stairs; occasionally crawl and climb ladders, ropes and scaffolds; and frequently handle, finger and feel with his left upper extremity.

6.  Plaintiff is unable to perform any past relevant work.

7.  Plaintiff was born on October 24, 1966, and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date.

8.  Plaintiff has at least a high school education and is able to communicate in English.

9.  Plaintiff has acquired work skills from past relevant work.

10. Considering Plaintiff's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferrable to other occupations with jobs existing in significant numbers in the national economy.

11. Claimant has not been under a disability, as defined in the Social Security Act, from March 10, 2017 through the date of decision (i.e., May 22, 2019).[4]

## IV.    FACTUAL BACKGROUND

On or about March 10, 2017, Plaintiff sustained gunshot wounds that caused a laceration of the lung, puncture wound of the left front wall of the thorax with penetration into the thoracic cavity, multiple rib fractures, posthemorraghic anemia, hemopnueumothorax, puncture wound of the left back wall to the thorax and puncture wound of the left upper arm.  Tr. 284.  His post-trauma surgery and hospitalization were uneventful, and he was fully ambulatory when discharged on March 15, 2017, after having transitioned from ICU to a regular floor on March 12, 2017.  Tr. 284; *see also* Tr. 314.  Plaintiff's wounds were healing well at his first follow-up appointment two weeks after discharge and also at his second follow-up four weeks later.  Tr. 457-58, 461-62.  At these follow-up visits, Plaintiff voiced left arm pain/weakness.  Tr. 457, 461.  Medical records reflect Plaintiff's grip strength in his left hand as 4/5 and right hand of 5/5.  Tr. 458, 462.  He also voiced these concerns at his disability determination examination on May 30, 2017.  Tr. 467-70.

### A.    Plaintiff's Hearing Testimony

Plaintiff testified that, as a result of gunshot wounds on March 10, 2017, he has no feeling on his left side, he can't pick up anything heavy, and he can't clutch and feel.  Tr. 48.  He also testified that he has deteriorating discs that preclude him from standing too long (about an hour), sitting a certain way (about an hour), or walking too long.  Tr. 49.  He also indicated that he has experienced rectal fissures[5] (Tr. 49-50) and has experienced shortness of breath requiring the use

---

[4] Tr. 12-21.
[5] *E.g.*, Tr. 551 (medical record dated 5/31/2018 reflecting boil in middle of lower back); 474 (medical record dated 6/11/2018 reflecting boils on left buttock); 483 (medical record dated 11/26/18 reflecting anal abscess); 489 (medical record dated 1/14/19 discussing surgery for recurrent perianal abscess).

4

of an inhaler since the March 10, 2017 incident.  Tr. 52.  Plaintiff reported side effects of his medication, including drowsiness, loose bowels, and runny nose.  Tr. 51.

**B. <u>Vocational Expert Testimony</u>**

After stipulating to vocational expert Clifton King's qualifications, Mr. King addressed Plaintiff's relevant work history.  Mr. King testified that a pipefitter helper is categorized as DOT 862-684-022, heavy exertion as customarily performed, with a specific vocational preparation (SVP) of 3 (semi-skilled); sandblaster is DOT 503.687-010, medium exertion, with SVP of 2 (unskilled); painter is DOT 869.664-014, heavy, with SVP of 4 (semi-skilled); dump truck driver is 902.683-010, medium, with SVP of 2 (unskilled); front-end loader is DOT 921.683-042, medium, with SVP of 3 (semi-skilled); concrete/construction worker is DOT 869.664-014, heavy, with SVP of 4 (semi-skilled); and laborer is DOT 869.687-026, very heavy, with SVP of 2 (unskilled).  Tr. 55-57.

The ALJ posed a hypothetical involving an individual of the same age, education and past relevant work experience as Plaintiff but who could occasionally lift, carry, push and pull 25 pounds; frequently lift, carry, push and pull 20 pounds; stand, walk and sit for six out of eight hours; occasionally climb ladders, ropes and scaffolds; occasionally crawl; frequently climb stairs and ramps;  frequently kneel, crouch, and stoop; has no limitation on balance; and for the left upper extremity, frequently handle, finger and feel.  Tr. 58.  When asked whether such a person would perform Plaintiff's past relevant work, Mr. King testified that such a person would not be able to perform Plaintiff's past work.  *Id*.  When asked whether such a person could perform any other work available in the national economy, Mr. King identified positions as belt repairers (approximately 22,000 nationwide), gas meter repairer (approximately 16,000), water leak repairer (approximately 6,500-7,000 nationwide). *Id.* at 59.   Proposing a second hypothetical based on the

same postural as the first, except the person could lift, carry, push and pull 10 pounds occasionally and less than 10 pounds frequently; stand, and walk for two out of eight hours; and sit for six out of eight hours.  *Id.* at 59.  Mr. King testified that such a person could not perform Plaintiff's past relevant work and the only transferrable skill jobs would be unskilled SVP of 2.  *Id.* at 60.

The ALJ asked Mr. King:  "[I]f any of your responses are inconsistent with the information in the Dictionary of Occupational Titles and/or the SCO, please identify those inconsistencies and explain why your opinion differed from the DOT and/or SCO."  Mr. King responded:  "[M]y testimony is consistent with both documents.  Tr. 60.  Plaintiff's counsel declined, twice, to ask the vocational expert any questions.  Tr. 60, 61.

## V.    MEDICAL EVIDENCE

I have reviewed the medical records in evidence and the ALJ's summary of the medical evidence. Tr. 12-20.  I find the ALJ's summary of the medical evidence substantially correct and incorporate it herein by reference, with the modifications, corrections and highlights noted below.

## VI.    STANDARD OF REVIEW

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits.[6]  The role of this court on judicial review under 42 U.S.C. § 405(g) is to determine whether the decision is supported by substantial evidence on the record as a whole and whether the proper legal standards are applied in evaluating the evidence.[7]  The court must affirm the Commission's determination to deny benefits unless it finds that the ALJ applied the incorrect legal standard or that the ALJ's determination is not supported by substantial evidence.[8]

---

[6] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1158 (2019) (Sotomayor, dissenting) (citing *Richardson v. Perales*, 402 U.S. 389, 410 (1971); *Sims v. Apfel*, 530 U.S. 103, 111 (2000); Social Security Ruling, SSR 00-4P, 65 Fed. Reg. 75760 (2000)).

[7] *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Perez v. Barnhar*t, 415 F.3d 457, 461 (5th Cir. 2005); *Richard ex rel Z.N.F. v. Astrue*, 480 F. App'x 773, 776 (5th Cir. 2012); *Stringer v. Astrue*, 465 F. App'x 361, 363 (5th Cir. 2012) (citing *Waters v. Barnhart*, 276 F.3d 716, 716 (5th Cir. 2002)).

[8] *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it is more than a scintilla but less than a preponderance.[9]  The Court considers four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history.[10]  A finding of "no substantial evidence" is appropriate only if no credible evidentiary choices or medical findings support the decision.[11]  The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try any issues *de novo*.[12]  Thus, this Court cannot reweigh the evidence or substitute its judgment for that of the administrative fact finder.[13]

To be considered disabled and eligible for DIB and/or SSI,[14] a claimant must show that he is unable to perform substantial gainful activity because of a medically determinable physical or mental impairment.[15]  A "physical or mental impairment" is "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."[16]  To qualify as a disability, the

---

[9] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019); *Richardson v. Perales*, 402 U.S. 389, 401 (5th Cir. 1971); *Richard ex rel Z.N.F.*, 480 F. App'x at 776.
[10] *Chrisner v. Astrue,* 249 F. App'x 354, 356 (5th Cir. 2007) (quoting *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991); *accord Perez*, 415 F.3d at 463.
[11] *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000) (citations omitted).
[12] *Halterman ex rel Halterman v. Colvin,* 544 F. App'x 358, 360 (5th Cir. 2013) (citing *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).
[13] *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000); *see also Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985).
[14] The relevant law and regulations governing claims for DIB and SSI are identical. *Carmon v. Barnhar*t, 81 F. App'x 410, 411 n.1 (3d Cir. 2003) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)).
[15] *See* 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A).
[16] 42 U.S.C. § 423(d)(3).

impairment must be expected to result in death or have lasted (or can be expected to last) for a continuous period of not less than 12 months.[17]

The Commissioner has promulgated regulations that provide procedures for evaluating disability claims.[18]   "In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently engaged in substantial gainful employment; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in Appendix 1 of the Social Security Regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity.[19]   The claimant has the burden of proof under the first four steps; if the claimant successfully carries this burden, the burden shifts to the Commissioner at the fifth step to show that other substantial gainful employment is available in the national economy that the claimant is capable of performing.[20]  When the Commissioner shows that the claimant is capable of engaging in alternative employment, "the ultimate burden of persuasion shifts back to the claimant."[21]

## VII.   ANALYSIS

### A.  ALJ's Finding that Plaintiff Can Perform Less Than A Full Range of Light Work

Plaintiff argues that he should be limited to sedentary or less than a full range of sedentary work, and that substantial evidence does not support the ALJ's finding that he can perform less than a full range of light work.  ECF 15, at 4.  Specifically, he contends that substantial evidence does not support the ALJ's conclusion that Plaintiff has frequent use of his left upper extremity.

---

[17] *Id.* § 423(d)(1); *see also Copeland*, 771 F.3d at 923.
[18] 20 C.F.R. §§ 404.1501 - 404.1599 & Appendices, §§ 416.901 to 416.998.
[19] *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007).
[20] *Id.* at 448.
[21] *Id.*

In so arguing, Plaintiff relies on (1) his own testimony and (2) social security rulings addressing the loss of upper extremity as a result of paralysis and amputation. Notably, Plaintiff has no medical evidence of paralysis or amputation. Rather, the medical evidence reflects that Plaintiff received gunshot wounds, which resulted in surgery and hospitalization from March 10-15, after which he received minimal treatment for other medical problems and minimal follow-up related to his gunshot trauma care. *See* University Medical Center ("UMC") Medical Records from March 10-15, 2017 (Tr. 282-456); UMC follow-up visit on March 27, 2017 (Tr. 457-58); UMC follow-up visit on April 24, 2017 (Tr. 461-63); Comprehensive Physical Exam (Tr. 464-71); and other office visits (Tr. 472-618; 626-32).

The objective medical documentation reflects that, approximately six weeks after the gunshot wounds, Plaintiff exhibited normal range of motion of the thoracolumbar spine, with decreased range of motion of cervical spine, and normal grip strength (5/5), dexterity, grasping, handling and fingering on the right while Plaintiff has *diminished* grip strength (4/5), dexterity, grasping, handling and fingering on the left. Tr. 469-70. He suffered no loss of gait and station, and he could push, pull and reach as well as crouch, stoop and squat without difficulty. *Id*. at 470.

At the hearing, Plaintiff testified that he lacks feeling in his left arm, has loss of use in the left arm and hand, and can only sit or stand for one hour at a time because of low back pain. Tr. 48-49. He also stated that he no longer has strength on his left side and cannot pick up anything, heavy, feel or climb. Tr. 48. While Plaintiff had reported left arm numbness and pain (Tr. 461, 470), he previously indicated that he could not lift 50 pounds anymore, but did not indicate how much he could lift without difficulty. *Id.* at 32. In contrast to Plaintiff's testimony, the State agency physician's functional capacity assessment dated July 24, 2017, indicates that Plaintiff is able to lift and/or carry 25 pounds occasionally, lift and/or carry 20 pounds frequently, and stand

and/or walk (with normal breaks) for a total of 6 hours on a sustained basis in an 8-hour workday. *Id*. at 75-76, 87.  He could likewise climb stairs, stoop, kneel, and crouch  frequently and climb ladders/ropes, scaffolds and crawl occasionally.  *Id*. at 76, 87.

While the ALJ recognized that Plaintiff's medically determined impairments could reasonably be expected to cause some of the alleged symptoms, she noted that Plaintiff's statements regarding the intensity, persistence and limiting effects of these symptoms were not consistent with the medical and other evidence in the record.  *Id*. at 16.  When a claimant gives subjective testimony, the ALJ has the responsibility to evaluate the claimant's credibility.[22] Because the ALJ is best suited to make a credibility determination, the court gives considerable deference to the ALJ's findings if substantial evidence supports those findings.[23]

To determine credibility, the ALJ must review the entire record and expresses specific reasons for her credibility findings, but the ALJ does not have to discuss every piece of evidence.[24] If the ALJ explains her credibility findings and substantial evidence supports those findings, the Court must affirm the ALJ's credibility assessment.[25]  After considering the factors identified in SSR 16-3p, the ALJ concluded that the medical evidence did not substantiate the degree of functional limitation alleged by Plaintiff, noting that his statements were inconsistent with the medical evidence demonstrating a progressive recovery with resulting clinical findings and diagnostic testing that was largely within normal limits.[26]

The ALJ's citation to the medical and other evidence (*id*. at 17-19) provides a substantial evidentiary basis to support her finding that Plaintiff has the residual functional capacity to perform

---

[22] *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2008).
[23] *McKnight v. Astrue*, 340 F. App'x 176, 181 (5th Cir. 2009).
[24] *Giles v. Astrue*, 433 F. App'x 241, 249 (5th Cir. 2011).
[25] *Undheim v. Barnhart*, 214 F. App'x 448, 450-51 (5th Cir. 2007).
[26] Tr. at 16-17.

light work, rather than only sedentary work. As her findings are supported by substantial evidence, they will not be disturbed on judicial review.

**B.  The ALJ's Finding of Alternative Jobs in Significant Numbers**

The ALJ determined that, although claimant's limitations did not allow him to perform his past relevant work, considering his residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines at 20 C.F.R. Part 404, Subpart P, Appendix 2, he had acquired skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy.[27] Plaintiff contends that the jobs listed by the vocational expert do not constitute jobs in "significant numbers," and that the ALJ failed to consider various criteria in determining whether work exists in significant numbers. ECF No. 15, at 3.

Contrary to Plaintiff's assertion, the ALJ expressly considered the relevant criteria, including the level of Plaintiff's disability and his residual functional capacity in reaching her conclusion.[28] The ALJ explicitly addressed her reasons for discounting Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms, finding they were inconsistent with his progressive recovery following the gunshot wounds and with resulting clinical findings and diagnostic testing that was largely within normal limits. Tr. 17; *see also id.* at 16. Further, the ALJ's hypotheticals rely on the parameters identified by the state agency physician's functional capacity assessment. *Id.* at 75-76, 87. And, contrary to Plaintiff's suggestion, the ALJ did consider Plaintiff's left side limitations, but found that these impairments did not preclude him from performing a wide range of light work. *See, e.g., id.* at 19.

---

[27] Tr. at 20-12. *See Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001); 20 C.F.R. §§ 404.1520(e), (g), 404.1560(c).
[28] Tr. at 12-14, 14-19, & 20-21.

Further, while Plaintiff attacks the vocational expert's testimony as to the number of jobs available, he does not allege, nor does he provide any evidence, that the cited numbers are wrong. Further, he did not cross-examine the expert to explore that issue.  Instead, he simply argues that the number of identified jobs (22,000 belt repairers, 16,000 gas meter repairers, and 6,500 water leak repairers[29]) is insufficient.  In doing so, Plaintiff fails to address (or even mention) the various decisions holding that similar job numbers are sufficient.  *See, e.g.*, *Lirley v. Barnhart*, 124 F. App'x 283, 284 (5th Cir. 2005) (holding that 50,000 jobs in the nation was significant); *McGee v. Astrue*, No. 08-0831, 2009 WL 2841113, at *6 n.14 (W.D. La. Aug. 28, 2009) (finding that 150 jobs in the state of Louisiana and 18,760 in national economy constitute significant numbers) (citing *Johnson v. Chater*, 108 F.3d 178, 181 (8th Cir.1997) (200 jobs at state level and 10,000 nationally, constitute a significant number)); *Mercer v. Halter*, No. Civ. A. 4:00-CV-1257, 2001 WL 257842, at *6  (N.D. Tex. Mar. 7, 2001) (finding that 500 jobs in Texas and 5,000 jobs in national economy constitute significant numbers).

The vocational expert enumerated a significant number of jobs existing in one or more occupations that plaintiff can perform.  Plaintiff has provided nothing to indicate that the expert's testimony was incorrect or speculative.  Accordingly, the ALJ's decision should be affirmed. *See* *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

**C.  <u>Closed Period of Disability</u>**

Plaintiff argues the ALJ erred in making no determination regarding any closed period of disability.  Citing Social Security Ruling, SSR 82-52, Plaintiff contends that the ALJ was required to determine whether a medical determinable impairment could be expected to last for a continuous period of at least 12 months.  ECF No. 15, at 6.

---

[29] Tr. at 21.

In a case involving a closed period of disability, "the decision-maker determines that a new applicant for disability benefits was disabled for a finite period of time which started and stopped prior to the date of the decision."[30]  The Social Security Administration's policy is to establish a closed period of disability where the evidence shows that a plaintiff was unable to engage in substantial gainful activity for a continuous period of 12 months but the claimant is no longer disabled by the time a disability determination is made. 3 Soc. Sec. Law & Prac. § 39:64; *see* 42 U.S.C. § 416(i)(2)(D).[31]  Plaintiff has the burden to show that he was disabled for a continuous period of 12 months on or before the date that the disability determination was made.[32]

The Commissioner typically awards benefits for a closed period of disability when a claimant experiences medical improvement in a previously disabling condition and becomes able to engage in substantial gainful activity. *Teague v. Astrue*, 342 F. App'x 962, 963-64 (5th Cir. 2009) (citing 42 U.S.C. § 423(f)(1); 20 C.F.R. § 404.1594(b)(3); *Waters v. Barnhart*, 276 F.3d 716, 717, 719 (5th Cir. 2002)).  The requirement of SSR 82-52[33] that the ALJ present a specific rationale for denying a closed period of disability applies only to cases of otherwise disabled

---

[30] *Waters v. Barnhart*, 276 F.3d 716, 719 (5th Cir. 2002) (quoting *Picket v. Bowen*, 833 F.2d 288, 289 n.1 (11th Cir. 1987)).

[31] When an ALJ grants disability insurance benefits to an applicant for a closed period of disability, two decision-making processes occur.  *Joseph v. Astrue*, 231 F. App'x 327, 329 (5th Cir. 2007) (citing *Waters*, 276 F.3d at 719). First, the ALJ finds the applicant disabled and grants benefits. *See id*. Second, the ALJ engages in the termination decision-making process to find that the disability ended at some date prior to the hearing. *See id*. Under this latter process, disability benefits may be terminated if there is substantial evidence demonstrating that:

> (A) there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and
> (B) the individual is now able to engage in substantial gainful activity.

42 U.S.C. § 423(f)(1). The government bears the burden "to show that the claimant's disability has ended as of the cessation date." *See Joseph*, 231 F. App'x at 329 (citing *Waters*, 276 F.3d at 717).  Consequently, benefits may be terminated if the Commissioner proves (1) that there has been a medical improvement related to the ability to work, and (2) that the beneficiary can engage in substantial gainful activity.  42 U.S.C. § 423(f); 20 C.F.R. § 404.1594(a).

[32] *Davis v. Comm'r, SSA*, No. 6:20-CV-00016, 2021 WL 100610, at *2 (E.D. Tex. Jan. 12, 2021).

[33] Although the Commissioner's rulings "are not binding on this court, we have consulted them 'when the statute at issue provides little guidance.'" *Bryant v. Astrue*, 272 F. App'x 352, 356 (5th Cir. 2008) (quoting *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001)); *accord Ramirez v. Colvin*, 606 F. App'x 775, 778 (5th Cir. 2015).

claimants whose claims are denied on the basis of insufficient duration of the claimant's inability to engage in substantial gainful activity.[34]

In this case, Plaintiff did not argue that he was disabled only for a specific period of time; he argued that he continues to be disabled.[35]  Further, the ALJ did not deny Plaintiff's claim based on insufficient duration of his inability to engage in substantial gainful employment.  Rather, the ALJ denied Plaintiff's claim on the basis that, "from March 10, 2017, through the date of this decision," plaintiff has had the residual functional capacity to perform work that was available in significant numbers.  Tr. 21.  Accordingly, the ALJ was not required to discuss her rationale for not awarding a closed period of disability when she found that no such disability existed.[36] Plaintiff fails to identify substantial evidence that he was disabled by his severe impairments from working for any period of 12 continuous months.[37]

The ALJ considered, weighed and resolved conflicts in the record evidence.  She determined that no disability occurred.  Therefore, she was not required to discuss her rationale for not awarding a closed period of disability.  Accordingly, this assignment of error lacks merit.

## VIII.  CONCLUSION

The ALJ used the appropriate legal standards and her findings are all supported by substantial evidence.

---

[34] SSR 82-52, 1982 WL 31376, at *1, *3 (1989); .

[35] *Green v. Commissioner of Social Security Administration*, No. 16-1227, 2017 WL 7035682, *9 (W.D. La. Dec. 22, 2017) (stating that case is not suitable for closed period of disability analysis where claimant argues he continues to be disabled rather than he was disabled for a specified period of time and fails to identify the particular period of time for which he should have been granted benefits).

[36] *See Hurst v. Colvin*, 639 F. App'x 1018, 1023 (5th Cir. 2016) (rejecting argument that ALJ failed to consider closed period of disability where ALJ considered entire medical record, including evidence relating to visits within twelve months following the alleged onset of disability, in reaching her conclusion); *Kelly v. Astrue*, 2011 WL 3563197, at *10 (E.D. La. Jun. 27, 2011) (rejecting argument that ALJ was required to address closed period of disability when ALJ concluded that claimant had not been under a disability from date of onset through date of decision); *Magee v. Colvin, Cuv*, 16-2234, 2016 WL 6683533, *6 (E. D. La. Sept. 15, 2016) (same); *Heck v. Colvin*, No. 15-3483, 2016 WL 4004577, *16 (E.D. La. Apr. 6, 2016) (same).

[37] *Heck*, 2016 WL 4004577, at *16.

## **RECOMMENDATION**

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff's appeal be denied and his complaint be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.[38]

New Orleans, Louisiana, this ___5th___ day of March, 2021.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

[38] *See* 28 U.S.C. § 636(b)(1)(C); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc). *Douglass* referred to the previously applicable ten-day period for filing of objections, which was extended to fourteen days by amendment effective December 1, 2009, 28 U.S.C. § 636(b)(1).